IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RAYTHEON COMPANY,<br><br>           Plaintiff,<br>v.<br><br>CRAY, INC.,<br><br>           Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO QUASH<br><br>Case No. 2:16-mc-0898 DAK<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Brooke Wells |

This matter is referred to the undersigned from Judge Dale A. Kimball in accordance with 28 U.S.C. 636(b)(1)(A). Before the court is nonparty Adaptive Computing Enterprises, Inc.'s Motion to Quash Plaintiff Raytheon Company's subpoena.[1] Adaptive also moves for the costs and fees associated with bringing this motion. As set forth below the court denies Adaptive's Motion to Quash.

BACKGROUND

Plaintiff Raytheon is a technology and innovation company in the defense, civil, government and cybersecurity markets. One aspect of its business is high-performance computing (HPC) or supercomputers. Among the many patents that Raytheon holds are those that focus on HPC system architecture (Patent Nos. 8,335,909 and 9,037,833) and those that focus on fault recovery and job management processes for these systems (Patent Nos. 7,475,274 and 8,190,714).

Raytheon filed suit in the Eastern District of Texas against Defendant Cray, Inc. alleging infringement of the '909, '833, '274 and '714 patents through Cray's sale of various HPC

---

[1] Docket no. 2.

systems, including those sold with Adaptive's Moab software.[2] In Raytheon's Infringement Contentions in the parent case it identifies certain Cray supercomputers that use the Moab software developed by Adaptive and PBS Professional software developed by Altair.

In February Defendant Cray was required under the Eastern District of Texas' Patent Rules to provide "'source code, specficiations, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality.'"[3] During the continuing discovery disputes between Cray and Raytheon, Cray informed Raytheon that it did not locate any of the source code for Moab and PBS Professional.[4] Raytheon then sought this source code from third-parties Adaptive and Altair. A subpoena was issued to each on May 13, 2016.

Altair expressed concerns about the protections found in the original protective order if it produced its source code. Eventually, an amended protective order was negotiated between Raytheon and Cray and subsequently entered. This protective order "'more-expressly clarif[ied] that third parties, such as Altair [and Adaptive], may enjoy the same level of protection under the Order as do Cray and Raytheon.'"[5] With those changes and enhanced protections, Altair agreed to make its source code available for Raytheon to inspect. Adaptive refused, however, to provide the Moab source code and instead pointed Raytheon to an open source product called

---

[2] *See* Op. p. 2.

[3] *Id.* p. 3 (quoting Eastern District Patent Rule 3-4(a)).

[4] *See id.*

[5] *Id.* p. 4 (quoting Stringfield Decl. ¶13).

TORQUE.[6]  According to Adaptive, Moab does not interface directly with Cray machines and instead uses TORQUE to communicate and interface with the Cray machines.[7]

After examining TORQUE Raythoμn informed Adaptive that it does not replace Moab's job scheduler functionality that is part of the Accused Instrumentalities in the parent case.  So, Raytheon continued to seek access to the Moab source code.  Adaptive refused and this motion followed.

DISCUSSION

Rule 45(d)(3)(B)(i) provides that a court may "quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information."[8]  However, "there is no absolute privilege for trade secrets and similar confidential information."[9]  Rather once it is established that the information sought is a trade secret or sensitive commercial information, the requesting party must establish that the information is relevant and necessary.[10]  This court must balance "'the relevance of the discovery sought, the requesting party's need and the potential hardship to the party subject to the subpoena'"[11] while keeping in mind that the "burden is particularly heavy to support a 'motion to quash as contrasted to some more limited protection.'"[12]

There is no dispute that Adaptive's Moab source code is a protected trade secret, which makes logical sense, because source code is often "a company's crown jewel, the shining star in

---

[6] Open source code is distributed at no cost although it may be bound by the terms of the GNU General Public License (GPL).  The GPL puts restrictions on the modification and subsequent distribution of freeware programs.

[7] *Id.* p. 4-5.

[8] Fed. R. Civ. P. 45(d)(3)(B)(i).

[9] *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 (1979) (quotation omitted).

[10] *See Centurion Industries, Inc. v. Waren Steurer and Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981).

[11] *Truswal Systems Corp. v. Hydro-Air Engineering, INc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987) ((quoting *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986));

[12] *Id.* (quoting *Westinghouse Electric Corp. v. City of Burlington*, 351 F.2d 762, 766 (D.C.Cir. 1965)).

the constellation of a computer program's intellectual property rights."[13] Adaptive argues that Raytheon has failed to show a substantial need for the "highly sensitive and confidential source code."[14]

The court agrees with Raytheon that the Moab source code is relevant especially given that "relevancy is more broadly construed during discovery than at trial."[15] The court finds that Raytheon has also established a need for the Moab source code. It is part of the Accused Instrumentalities in the parent case and there is no other source for the code other than Adaptive. The court is also persuaded that the hardship is minimal especially given two facts. First, there is an amended protective order that provides enhanced protections for third-parties. Such protections are adequate for Altair to produce its requested source code for PBS Professional. Second, Raytheon has agreed to reimburse Adaptive for its reasonable out of pocket expenses in complying with the subpoena. This will reduce the cost and burden on Adaptive.

Finally the court finds that Raytheon has taken reasonable steps to avoid imposing undue burden or expense.[16] For example, as previously noted, Raytheon agreed to reimburse Adaptive for reasonable out of pocket expenses in collecting the information it seeks.[17] And based on the record it appears Raytheon did investigate the open-source TORQUE software and how it is used in conjunction with Moab. Contrary to Adaptive's arguments, the mere fact that Raytheon persists in its request for the Moab source code, does not by itself lead to the imposition of fees. The court will therefore deny the request for fees and costs with bringing the motion.

---

[13] Mtn. p. 7, docket no. 2.

[14] Reply p. 2, docket no. 19.

[15] *Master Palletizer Systems, Inc. v. T.S. Ragsdale Co. Inc.*, 123 F.R.D. 351, 353 (D.Colo. 1988) ; *see also Centurion Industries, Inc. v. Warren Steurer and Assoc.*, 665 F.2d 323, 326 (10th Cir. 1981).

[16] *See* Fed. R. Civ. P. 45(d)(1).

[17] *See* Stringfield Decl. ¶ 15, docket no 13.

ORDER

For these reasons, the court DENIES Adaptive's Motion to Quash Raytheon's Subpoena. The court also DENIES Adaptive's request for the fees and costs and associated with brining this motion. The court further ORDERS Raytheon to reimburse Adaptive for reasonable out of pocket expenses in providing the information it seeks.[18]

DATED this 30 January 2017.

Brooke C. Wells
United States Magistrate Judge

---

[18] The court is hopeful that the parties can work out what exactly are reasonable out of pocket expenses without further court intervention.