IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **RAYTHEON COMPANY,** | |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| **CRAY, INC.,** | **Case No.  2:16-MC-898-DAK** |
| Defendant. | **Judge Dale A. Kimball** |

This matter is before the court on Adaptive Computing Enterprises, Inc.'s, ("Adaptive's") Objection to Magistrate Judge Brooke C. Wells's January 30, 2017, Memorandum Decision and Order. The objection has been fully briefed. The court concludes that a hearing would not significantly aid its determination of the motion. Accordingly, the court issues the following Memorandum Decision and Order based on the written submissions of the parties and the law and facts relevant to the pending motion.

## BACKGROUND

Plaintiff Raytheon Company is a technology and innovation company. One aspect of its business is High-Performance Computing ("HPC") or supercomputers. Raytheon filed suit in the Eastern District of Texas against Defendant Cray, Inc., alleging infringement of several of its patents through Cray's sale of various HPC systems including those sold with Adaptive Computing Enterprise's ("Adaptive's") Moab software.

In Raytheon's Infringement Contentions in the parent case, Raytheon identifies certain Cray supercomputers that use the Moab software developed by Adaptive and the PBS Professional software developed by Altair. During continuing discovery disputes between Cray

1

and Raytheon, Cray informed Raytheon that it did not locate any of the source code for Moab and PBS Professional. Raytheon then sough this source code from third-parties Adaptive and Altair. A subpoena was issued to each on May 13, 2016.

Due to concerns about protections for third parties in the original protective order expressed by Altair, Raytheon and Cray negotiated an amended protective order that gave third parties the same level of protection as Cray and Raytheon. Under the amended protective order, Altair agreed to produce its source code. But Adaptive still refused to provide the Moab source code. Instead, Adaptive pointed Raytheon to an open source product called TORQUE, which is used to allow Moab to communicate and interface with Cray machines.

After examining TORQUE, Raytheon informed Adaptive that it does not replace Moab's job scheduler functionality that is part of the Accused Instrumentalities in the parent case. When Raytheon continued to seek access to Moab source code, Adaptive filed a Motion to Quash Raytheon's Subpoena and for Protective Order. The motion was referred to Magistrate Judge Brooke C. Wells, who issued a Memorandum Decision and Order Denying the Motion to Quash on January 30, 2017. On February 13, 2017, Adaptive filed an Objection to Magistrate Judge Wells's decision. In response to a court order, Raytheon filed a response to the objection on February 21, 2017.

## DISCUSSION

Adaptive objects to Magistrate Judge Wells's decision because Adaptive argues that Magistrate Judge Wells applied the wrong legal standard to find that the source code was relevant and necessary to Raytheon's action, considered irrelevant factors, and failed to consider relevant factors. Raytheon argues that Adaptive has not shown that Magistrate Judge Wells's

decision is clearly erroneous or contrary to law as required by Federal Rule of Civil Procedure 72(a). The court will address the merits of Adaptive's objection.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), a district court is required to "consider timely objections [to a nondispositive order from a magistrate judge] and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). Under Rule 72, a district court is "required to 'defer to the magistrate judge's ruling unless it [is] clearly erroneous or contrary to law.'" *Allen v. Sybase, Inc.*, 468 F.3d 642, 658–59 (10th Cir. 2006) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997)). The "clearly erroneous" standard under Rule 72(a) "applies to factual findings." *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-CV-890-TS-BCW, 2010 WL 3855347, at *2 (D. Utah Sept. 29, 2010). In order for a district court to overturn a magistrate judge's decision as clearly erroneous, the court must be left with a "definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Under the 'contrary to law' standard, the district court conducts a plenary review of the magistrate judge's purely legal determinations, setting aside the magistrate judge's order only if it applied an incorrect legal standard." *Williams v. Vail Resorts Dev. Co.*, No. 02-CV-16-J, 2003 WL 25768656, at *2 (D. Wyo. Nov. 14, 2003) (citation omitted). "In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by a district judge." *Id.* (citations omitted).

## DISCLOSING TRADE SECRET OR CONFIDENTIAL INFORMATION

The general standard for whether a matter is within the scope of discovery is outline in Federal Rule of Civil Procedure 26, which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, a party subject to a subpoena for production of a "trade secret or other confidential research, development, or commercial information" may move a court to quash or modify the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(B). Under the circumstances present in this case, on a motion to quash or modify a subpoena that requires the disclosure of trade secret or other specified confidential information, the court may either "quash or modify the subpoena" or "order appearance or production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(B) & (C).

Consistent with these rules, courts have concluded that "there is no absolute privilege for trade secrets and similar confidential information." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 (1979). To resist discovery of trade secrets or confidential information, "a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325 (10th Cir. 1981). "If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action." *Id.* "The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure." *Id.* "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure." *Id.* at

326; *see also Truswal Systems Corp v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987) (requiring a court to balance "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena" (citation omitted)). A court may consider "[t]he fact that discovery is sought from a non-party" as a "factor that weighs against disclosure." *Fanjoy v. Calico Brands, Inc.*, Civil No. 2:06-MC-469-DB, 2006 WL 2303115, at *2 (D. Utah Aug. 8, 2006) (citations omitted).

After properly describing the standard for determining whether to quash or modify a subpoena, Magistrate Judge Wells accepted the undisputed facts that Adaptive's source code is a trade secret and that disclosure of the source code might be harmful to Adaptive. Magistrate Judge Wells then found that Raytheon had shown that the source code was relevant and necessary to the action and that the hardship on Adaptive was minimal because of the existing amended protective order and Raytheon's agreement to reimburse Adaptive for its reasonable out-of-pocket expenses in complying with the subpoena.

After reviewing the legal standard and the analysis provided by Magistrate Judge Wells, the court is not left with a definite and firm conviction that a mistake has been made as to the factual findings or that an incorrect legal standard has been applied. Therefore, the court concludes that the decision by Magistrate Judge Wells is not clearly erroneous or contrary to law.

However, the court recognizes that Adaptive has valid arguments supporting its position that it should not be required to disclose its confidential source code. In its objection, Adaptive argues that Raytheon has not shown that Adaptive's source code is even relevant to Raytheon's claims, identifies other sources for the information that Raytheon seeks in an attempt to negate Raytheon's need for the code, and highlights the harm that disclosing its source code to a competitor would have on Adaptive. Adaptive also argues that Magistrate Judge Wells

improperly considered irrelevant factors, such as Altair's decision to produce its source code to Raytheon, and failed to consider relevant factors, such as Adaptive's non-party status.

Despite Adaptive's valid arguments, the court concludes that Magistrate Judge Wells did not abuse her discretion by denying Adaptive's Motion to Quash. Magistrate Judge Wells considered Raytheon's arguments of relevance in the context of the broad scope of relevance during discovery and evaluated Raytheon's need for the source code in the context of a parent case in which the source code was part of the Accused Instrumentalities. Magistrate Judge Wells then balanced these factors with the harm to Adaptive in the context of an amended protective order with enhanced protections for third parties and with knowledge that Raytheon agreed to pay Adaptive's out-of-pocket expenses in complying with the subpoena. When decisions are within the court's discretion, like the decision whether to order the production of trade secrets, a court may properly exercise its discretion even if a party has valid reasons to disagree with the outcome. For a court's exercise of its discretion to be proper, it does not need to be consistent with how a party would have exercised the same discretion in the same circumstances.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Adaptive's Objection to Magistrate Judge Brooke C. Wells's January 30, 2017, Memorandum Decision and Order is DENIED. The court does not consider any part of Magistrate Judge Wells's order to be clearly erroneous or contrary to law and affirms her rulings in the order.

DATED this 2d day of March, 2017.

BY THE COURT:

_Dale A. Kimball_
DALE A. KIMBALL
United States District Judge